UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER AGUSTO ALVAREZ,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>SONOMA COUNTY, *et al.*,<br><br>　　　　Defendants.<br>_____/ | No. C-12-5606 EMC<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO DISMISS**<br><br>**(Docket No. 45)** |

　　　Previously, this Court granted in part and denied in part a motion to dismiss that had been filed by some (but not all) of the named defendants. For some of the claims that were dismissed, Plaintiff Javier Agusto Alvarez was given leave to amend. *See* Docket No. 37 (order). Mr. Alvarez has now filed a second amended complaint ("SAC"), *see* Docket No. 41 (SAC), and that complaint has now been challenged by the following defendants: County of Sonoma, Julie S. Paik, S. Sullivan, Laurie Lapidus, Anna New, and Veronica Ferguson (collectively, the "County Defendants").

　　　Having considered the parties briefs', as well as the oral argument of counsel and Mr. Alvarez, who is proceeding pro se, the Court hereby **GRANTS** the motion to dismiss.

## I.　FACTUAL & PROCEDURAL BACKGROUND

　　　Mr. Alvarez initiated this lawsuit in November 2012. In his first amended complaint ("FAC"), he sued the County and some of its employees, primarily those who work for the Division of Child Support Services. *See* Docket No. 25 (FAC). Mr. Alvarez asserted that the defendants named in the FAC had discriminated against him on the basis of his race, including but not limited to when they suspended or helped suspend his driver's license for an alleged failure to pay child

support. The defendants, other than Ms. Ferguson, filed a motion to dismiss which the Court granted in part and denied in part. *See* Docket No. 37 (order). Basically, after that order, certain claims against the County and Ms. Paik, the Director of the Division of Child Support Services, were left in the case, as well as claims against Ms. Ferguson (who had not appeared in the case and thus never filed a motion to dismiss). Mr. Alvarez was given leave to amend his equal protection and due process claims.

Mr. Alvarez thereafter filed a SAC. In his SAC, Mr. Alvarez dropped many of his substantive allegations against Ms. Paik and Ms. Ferguson. For example, unlike the FAC, the SAC does not allege that Ms. Paik and Ms. Ferguson made racially discriminatory remarks. Mr. Alvarez's untimely opposition suggests that he is changing the focus of his case so that is it is less a discrimination case and more about an alleged fraud by the defendants. *See, e.g.*, Opp'n at 4, 6 (arguing that he has shown "fraud on the account and these defendant's [sic] caused this fraud and are now and have been benefitting from this fraud"). *But see* Opp'n at 3 (asserting that the County and Ms. Ferguson have "discriminate[d] against people of color").

In the SAC, Mr. Alvarez sues the following defendants:

(1)  The County.

(2)  Ms. Paik. As noted above, Mr. Alvarez alleges that Ms. Paik is the Director of the Division of Child Support Services. Mr. Alvarez also alleges that Ms. Paik is the final decisionmaker for the Division. *See* SAC ¶ 3.

(3)  Ms. New. Mr. Alvarez alleges that Ms. New is an Account Collections Technician 2 with the Division of Child Support Services. *See* SAC ¶ 6.

(4)  Ms. Ferguson. Mr. Alvarez alleges that Ms. Ferguson is the County Administrator. *See* SAC ¶ 7.

(5)  Laurie B. Lapidus. Mr. Alvarez alleges that Ms. Lapidus is the Assistant Administrator of the Division of Child Support Services. *See* SAC ¶ 4.

(6)  S. Sullivan. Mr. Alvarez alleges that Ms. Sullivan is an Accountant for the Division of Child Support Services. *See* SAC ¶ 5.

1  (7) Ms. Alvarez. It appears that Ms. Alvarez is the mother of one or more of Mr. Alvarez's children to whom Mr. Alvarez has had to pay child support.

In the SAC, Mr. Alvarez alleges that Ms. Alvarez engaged in wrongdoing because she submitted false documents with regard to his child support obligations. *See* SAC ¶ 2.

As for the County Defendants, Mr. Alvarez alleges that they engaged in wrongdoing because they acted on the incorrect information provided by Ms. Alvarez, *see* SAC ¶ 38 – *e.g.*, by suspending his driver's license for a failure to pay child support allegedly owed, levying on his and his family's bank accounts to secure payment of child support, imposing tax liens on him and his family to secure payment of child support, and garnishing his wages to secure payment of child support. *See* SAC at 14. However, there are no allegations that any of these Defendants knew or should have known that Ms. Alvarez had submitted incorrect information.

Mr. Alvarez also suggests that the above adverse actions were taken against him because of his race, but the only person who may have harbored a discriminatory intent – based on the allegations in the SAC – was Ms. Lapidus. *See* SAC ¶¶ 40-44 (alleging that Ms. Lapidus told him that it was his fault that he was out of work, that he should be able to get a job washing dishes or picking grapes, and that he should "'know [his] place boy'").

Finally, Mr. Alvarez suggests that the County Defendants engaged in other adverse actions – *e.g.*, not posting his child support payments in a timely manner, *see* SAC ¶ 31, and making other accounting errors in calculating what child support he had paid. *See, e.g.*, Alvarez Decl. at 9 (asserting that the Division of Child Support Services took possession of his tax refund money but failed to give him credit for all of that money).

Based on, *inter alia*, the above allegations, Mr. Alvarez appears to be asserting the following claims for relief:

(1) Violation of 42 U.S.C. § 1983/equal protection.

(2) Violation of 42 U.S.C. § 1983/substantive due process.

(3) Violation of 18 U.S.C. § 1341 (mail fraud).

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

B. Equal Protection

Mr. Alvarez has asserted first a § 1983/equal protection claim against the County Defendants. All of the County Defendants have moved for dismissal.

    1. Individual Defendants

The major problem for Mr. Alvarez is that, for the most part, there are insufficient allegations in the SAC that the individual defendants (including Ms. Ferguson) engaged in any wrongdoing *because of* his race. For the most part, Mr. Alvarez has simply made a conclusory allegation that the individual defendants discriminated against him because of his race or a speculative allegation of such. *See* SAC ¶ 10 (alleging that "[t]he scheme of the Defendant(s) discriminated against the Plaintiff because of his race/ethnicity, i.e., Hispanic" and that "[w]hereby it is a known fact that these types of scheme are perpetuated predominantly against Minority groups"). Such a conclusory allegation without any supporting factual allegations is insufficient to state an

equal protection claim. *See Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

The one exception is Ms. Lapidus.[1] In the SAC, Mr. Alvarez alleges, *e.g.*, that Ms. Lapidus told him it was his fault that he was out of work, that he could get a job washing dishes or picking grapes, and that he should "'know [his] place boy.'" SAC ¶¶ 40-44. But even though these factual allegations suggested that Ms. Lapidus may have harbored a racially discriminatory stereotypes, it is not clear from the SAC what specific wrongdoing she engaged in. For example, at times Mr. Alvarez lumps Ms. Lapidus in with other defendants. But there are no specific allegations supporting Mr. Alvarez's attempt to lump Ms. Lapidus in with other defendants.

There are a few instances where Mr. Alvarez does appear to pinpoint Ms. Lapidus specifically for having engaged in certain conduct. For example, in the SAC, Mr. Alvarez alleges that Ms. Lapidus demanded that he pay money to have his driving privileges reinstated and that Ms. Lapidus made threats to take action against him and his family (including suspending his license). *See* SAC ¶¶ 40-44. The problem here is that these allegations are predicated on the assumption that there was no basis to suspend his driver's license – *i.e.*, because Ms. Alvarez had given false information to the Division of Child Support Services. But Mr. Alvarez has not alleged that Ms. Lapidus either knew or should have known that Ms. Alvarez had given false information. (Nor has he even identified what information Ms. Alvarez gave that was false.) To the extent Mr. Alvarez suggests that there was a conspiracy between the County Defendants and Ms. Alvarez (such that Ms. Lapidus knew the information given by Ms. Alvarez was false), that conspiracy allegation is conclusory and/or speculative and fails to state a plausible claim. *See Twombly*, 550 U.S. at 556-57, 570 (noting that a claim must be plausible, not simply conceivable; also noting that, in a conspiracy case, there must be allegations plausibly suggesting – and not merely consistent with – an agreement among the conspirators).

---

[1] As noted above, the FAC contained allegations that Ms. Paik and Ms. Ferguson made racially discriminatory remarks, but those allegations are nowhere in the SAC.

Accordingly, the Court dismisses the equal protection claim as to all County Defendants, including Ms. Lapidus. The dismissal is now with prejudice as the Court previously gave Mr. Alvarez an opportunity to amend to correct any deficiencies but he has failed to do so.

### 2. County

There are no allegations to support County liability. Mr. Alvarez simply makes the conclusory allegation of County liability, *see* SAC at 13 (¶ 12) (alleging that the County is liable because of, *e.g.*, a custom or policy, inadequate training, deliberate indifference, and ratification), that this Court previously rejected as inadequate.

### C. Substantive Due Process

Although not entirely clear, Mr. Alvarez also seems to be making a substantive due process claim against all named defendants. As above, all of the County Defendants have moved for dismissal.

### 1. Individual Defendants

To the extent Mr. Alvarez bases the substantive due process claim against the individual defendants on the fact that, *e.g.*, his driver's license was suspended or his and his family's bank accounts were levied upon, there is a significant problem. These allegations of wrongdoing are predicated on the assumption that Mr. Alvarez never actually owed any money to Ms. Alvarez – *i.e.*, because Ms. Alvarez had given false information to the Division of Child Support Services. But Mr. Alvarez has failed to allege that any of the individual defendants knew or should have known that Ms. Alvarez had given false information to the Division of Child Support Services.[2] Although Mr. Alvarez has alleged in the SAC that he informed Ms. New about errors made in a report given to him by the Division of Child Support Services (referred to in the SAC as the "Simple Report"), *see* SAC ¶ 7, none of those errors appear to have anything to do with the allegedly false information

---

[2] It is also worth noting that the Court, in its prior order, held that there was a proximate cause problem with Mr. Alvarez's attempt to attribute the suspension of his driver's license to the Division of Child Support Services. *See* Docket No. 37 (Order at 5) (stating that, even if Ms. Paik had played a role in the suspension of the license, "there are insufficient allegations to establish that her actions were a proximate cause of the suspension of his license"; noting that, "[a]t the hearing, Mr. Alvarez explicitly stated that a late payment would not automatically result in a suspension of a license [–] [r]ather, a hearing would be held by the [DMV] which would then make a determination as to whether there should be a suspension").

given by Ms. Alvarez. *See generally* Alvarez Decl. (providing examples of errors in the Simple Report).

The Court is therefore left with Mr. Alvarez's claim that his due process rights were violated because accounting errors were made with respect to the child support he had paid.[3] Mr. Alvarez alleges that he found the errors after he asked the Division of Child Support Services to provide him with an accounting/audit. *See* SAC ¶ 4. Ms. Sullivan (an Accountant for the Division) gave him a report – which Mr. Alvarez refers to as the "Simple Report" – and, after reviewing the report, Mr. Alvarez found the errors. *See* SAC ¶¶ 5-6. Mr. Alvarez claims that he contacted all named defendants and informed them of the errors, *see* SAC ¶ 7 (lumping together all defendants), and spoke to Ms. New (an Account Collections Technician 2 with the Division of Child Support Services). *See* SAC ¶ 7. According to Mr. Alvarez, Ms. New admitted that the report could contain errors, *see* SAC ¶¶ 8-9, and stated that "sometimes there are variations in the amounts reported on the monthly statements and other documents used to obtain bank levies, tax liens[,] wage garnishments and on credit reports." SAC ¶ 8. Mr. Alvarez alleges that none of the defendants, including Ms. New, ever took any steps to address the errors in the report. *See* SAC ¶ 9.

As a preliminary matter, the SAC does not contain any explicit allegation that Mr. Alvarez ever discussed any *specific* errors with Ms. New, as opposed to making a general claim that the report contained errors. Accordingly, the claim of a substantive due process violation is too conclusory to be plausible under *Twombly* and *Iqbal*. But even if Mr. Alvarez did discuss specific errors with Ms. New, the Court still concludes that Mr. Alvarez has failed to adequately pled a substantive due process claim.

"Substantive due process protects individuals from the arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006); *see also Nunez v. City of*

---

[3] In his SAC, Mr. Alvarez does not identify what those errors were. In a declaration which Mr. Alvarez submitted in conjunction with his opposition to the pending motion, Mr. Alvarez claims that there at least two specific accounting errors: (1) not posting his child support payments in a timely manner and (2) seizing his tax refund money and then not giving him full credit for the money seized. *See* Alvarez Decl. at 8-9. The declaration, however, may not be considered because the Court has before it a 12(b)(6) motion which restricts the Court, in essence, to a review of the complaint only.

*Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (stating that substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty'"). A substantive due process claim requires proof of two elements. *See Emmert Indus. Corp. v. City of Milwaukie*, 450 F. Supp. 2d 1164, 1175 (D. Or. 2006) (stating that, "to make out a substantive due process claim, [plaintiff] must show two elements: a protectible interest and egregious official conduct"). First, "'because there is no general liberty interest in being free from capricious government action,'" "a plaintiff must show a government deprivation of life, liberty, or property." *Brittain*, 451 F.3d at 991. Second, because "'[o]nly the most egregious official conduct can be said to be arbitrary in a constitutional sense,'" a plaintiff must also show "conscience shocking behavior by the government," *e.g.*, "conduct *intended* to injure in some way unjustifiable by any governmental interest." *Id.* (emphasis added). Regarding the second factor, the Supreme Court has noted that

> the constitutional concept of conscience-shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability. Thus, we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.

*County of Sacramento v. Lewis*, 523, U.S. 833, 848 (1998). Thus, "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849. But "[w]hether the point of the conscience-shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, is a matter for closer calls." *Id.* (internal quotation marks omitted).

Here, the Court assumes that Mr. Alvarez has a protectible property interest in his wages, tax refunds, bank accounts, and/or not being overcharged for child support. *See, e.g.*, *Noel v. City of Oroville*, No. 2:07-CV-00728 WBS EFB, 2007 U.S. Dist. LEXIS 80704 (E.D. Cal. Oct. 16, 2007) (where plaintiff asserted a protected property interest in his wages, deciding not to dismiss § 1983 claim for deprivation of employment compensation); *Peterson v. Peterson*, No. CIV 03-0660

1  JB/LAM, 2004 U.S. Dist. LEXIS 28280, at *18-19 (D.N.M. July 31, 2004) (where plaintiff sued
2  state agency employees for violation of due process because agency garnished his wages after he
3  stopped paying child support, assuming that plaintiff had a protected property interest in his wages);
4  *McClelland v. Massinga*, 786 F.2d 1205, 1211 (4th Cir. 1986) (conceding that plaintiffs had a
5  property interest in their tax refunds); *Wagner v. Duffy*, 700 F. Supp. 935, 942 (N.D. Ill. 1988)
6  (where intercepted tax refunds were used for child support payments, stating that "[t]here can be
7  little doubt that a citizen has a property interest in his or her tax refund, which is in reality withheld
8  wages"); *Marcello v. Regan*, 574 F. Supp. 586, 595 (D.R.I. 1983) (where plaintiffs' tax refunds had
9  been used to satisfy spousal or child support, noting that "defendants apparently do not dispute that
10 the plaintiffs have a property interest in their tax refunds"); *Childrens & Parents Rights Ass'n v.
11 Sullivan*, 787 F. Supp. 738, 740 (N.D. Ohio 1992) (stating that "[a]n interest in being assessed a fair
12 amount for child support is sufficient to trigger the remaining requirements for due process").

13     But even assuming such, Mr. Alvarez must still adequately plead egregious official conduct
14 in order to have a viable substantive due process claim.  Here, Mr. Alvarez has not made any
15 allegations suggesting anything more than mere negligence on the part of Ms. New that rises to the
16 level of conduct which shocks the conscience, particularly in the absence of any express allegations
17 that he pointed out specific errors to Ms. New which she then ignored.

18     The Court therefore dismisses the substantive due process claim.  As above, the dismissal is
19 with prejudice because the Court previously gave Mr. Alvarez an opportunity to amend but, even
20 with the amendment, he has still failed to allege a plausible claim for relief.

21     2.     County

22     As above, there is no basis for County liability.  There are no allegations supporting
23 municipal liability beyond the conclusory allegations that the Court previously rejected.

24 D.     Title 18 U.S.C. § 1341

25     Although the Court did not allow Mr. Alvarez to amend to add in any new claims for relief,
26 Mr. Alvarez did so in his SAC.  More specifically, he added a claim for fraud (more specifically,
27 mail fraud) pursuant to 18 U.S.C. § 1341.  This claim for relief is dismissed because (1) the
28 amendment was not permitted by the Court and, in any event, (2) the claim lacks merit as there is no

private right of action for mail fraud under § 1341. *See Ross v. Orange County Bar Ass'n*, 369 Fed. Appx. 868, 869 (9th Cir. 2010); *Watkins v. Proulx*, 235 Fed. Appx. 678, 678 (9th Cir. 2007); *Wilcox v. First Interstate Bank*, 815 F.2d 522, 533 n.1 (9th Cir. 1987).

E.   <u>Exemplary Damages</u>

In his complaint, Mr. Alvarez seeks punitive damages against "natural person defendants" only, Compl. at 17, but then seems to seek exemplary damages against all defendants, without limitation. *See* Compl. at 17. In the pending motion, the County seeks a dismissal of the claim for exemplary damages against it. Because there are insufficient allegations of municipal liability to support the § 1983 claim, this issue is moot. However, on the merits, the County is correct that exemplary damages may not be issued against it. There is no real difference between exemplary damages and punitive damages. *See, e.g.*, Black's Law Dictionary 417 (8th ed. 2004) (defining exemplary damages as punitive damages). A municipal entity is immune from punitive damages under § 1983. *See City of Newport v. Fact Concerts*, 453, U.S. 247, 268-71 (1981).

F.   <u>Injunctive Relief</u>

Finally, the County Defendants seek dismissal of Mr. Alvarez's claim for injunctive relief. Per the SAC, the sole injunctive relief sought by Mr. Alvarez is "[a]n injunction barring defendants from being employed in any form of public service." Compl. at 17. The County Defendants argue that Mr. Alvarez lacks standing to seek this injunction, that Mr. Alvarez has adequate remedies at law, that the injunction implicates federalism concerns, and that the injunction is overbroad and unrelated to any real or immediate threat to Mr. Alvarez. *See* Mot. at 12-13. Even if Mr. Alvarez might have standing to seek injunctive relief, *see de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 900, 997 (9th Cir. 2012) (stating that, "[t]o have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate 'that he is realistically threatened by a repetition of [the violation]'"; adding that an injury is likely to recur if, *e.g.*, the injury stems from a policy or is part of a pattern of officially sanctioned behavior), the other arguments made by the County are persuasive. Furthermore, because the SAC fails to state a viable legal claim, there is no basis for injunctive relief.

### III. CONCLUSION

For the foregoing reasons, the Court grants the County Defendants' motion to dismiss in its entirety, and the dismissal is with prejudice. This leaves as the sole defendant named in the SAC Ms. Alvarez. The problem here is that the Court previously dismissed Ms. Alvarez *with* prejudice – and pursuant to a request by Mr. Alvarez himself. *See* Docket No. 22 (motion filed by Mr. Alvarez, asking that Ms. Alvarez be dismissed with prejudice); Docket No. 24 (order granting dismissal with prejudice). In light of that dismissal, Ms. Alvarez is not properly named as a defendant in the SAC.

Accordingly, all claims against all defendants in the case have been dismissed with prejudice. The Court thus instructs the Clerk of the Court to enter a final judgment in accordance with this opinion and close the file in this case.

This order disposes of Docket No. 45.

IT IS SO ORDERED.

Dated: September 3, 2013

_____
EDWARD M. CHEN
United States District Judge